UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIA HILLIARD-EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:08-cv-0055-DFH-TAB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Kia Hilliard-Edwards seeks judicial review of a decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits and supplemental security income under the Social Security Act. Acting for the Commissioner, an Administrative Law Judge (ALJ) determined that Ms. Hilliard-Edwards was not disabled under the Social Security Act because she retained the residual functional capacity to perform sedentary work as defined in the regulations. For the reasons discussed below, the court affirms the Commissioner's decision.

*Background*

Ms. Hilliard-Edwards was born in 1962.  She completed eleventh grade and received a GED.  R. 495.  She has worked in manufacturing as a fan-blade aligner and as a machine deburrer.  R. 23.  Ms. Hilliard-Edwards claims that she became disabled on July 26, 2005 due to lower back problems.  R. 498.  She filed for disability insurance benefits and supplemental security income on December 13, 2005.  Both claims were denied initially on May 4, 2006 and upon reconsideration on August 18, 2006.  R. 15.  Ms. Hilliard-Edwards requested a hearing, which was held on May 4, 2007.  *Id.*  An ALJ denied both claims on July 26, 2007, and the Appeals Council denied further review of the ALJ's decision.

I.    *Medical Record*

Ms. Hilliard-Edwards started to have problems with her back in 2000 after lifting a couch.  R. 499.  Her medical records show that she began receiving treatment for her back problems in 2004.  Ms. Hilliard-Edwards has had several lumbar epidural steroid injections to  help relieve the pain in her lower back.  The first such injection documented in the record occurred on April 30, 2004.  R. 271. Subsequent injections were documented on August 8, 2004, February 17, 2005, July 21, 2005, January 12, 2006, and April 20, 2006.  R. 173, 225, 252, 266, 268.

On July 23, 2004, Ms. Hilliard-Edwards had an MRI of her lumbar spine. R. 270.  The results showed degenerative disc changes and facet arthritic changes

at the L4-5 and L5-S1 levels.  *Id.*  The appearance looked stable from 2002, and the upper lumbar levels were within normal limits.  *Id.*

On March 3, 2005, Ms. Hilliard-Edwards had a B-mode ultrasound examination.  R. 261.  Ms. Hilliard-Edwards was complaining of pain radiating into the base of her skull, neck, left shoulder and left leg, as well as the sensation of pins and needles and numbness in her arms, hands, legs, and feet.  *Id.*  The results of the ultrasound showed mild inflammation throughout the cervical area, and mild inflammation at a few points in the lumbar and sacral areas.  *Id.*

Ms. Hilliard-Edwards had a lumbar epidural steroid injection with fluoroscopic guidance at L5-S1 on July 21, 2005.  R. 252.  The doctor performing the procedure, Jonathan Gentile, discussed surgery options with Ms. Hilliard-Edwards during the evaluation due to recurring pain in her back and both of her legs.  *Id.*

On September 6, 2005, Ms. Hilliard-Edwards had a neurological evaluation performed by Dr. Kuimil Mohan.  R. 211.  Ms. Hilliard-Edwards told Dr. Mohan she was experiencing new symptoms, including neck pain, mild weakness in the left hand, and difficulty falling asleep due to pain. Ms. Hilliard-Edwards also reported that a few weeks earlier, her legs had given way and she had fallen down. *Id.*  Dr. Mohan found no evidence of weakness, clumsiness, or asymmetrical reflexes or power in any of Ms. Hilliard-Edwards' extremities.  *Id.*  Dr. Mohan did

not note any significant changes in her follow-up appointment on September 20th, but he ordered an MRI because of the chronic pain.  R. 245.  The MRI, performed on September 27, 2005, showed mild degenerative marrow changes surrounding the L5-S1 disk space in the lumbar spine, and degenerative disk disease changes from C3 through C7 with multiple central disk protrusions, resulting in canal stenosis and neural foraminal narrowing.  R. 240, 241.  Ms. Hilliard-Edwards had another follow-up appointment with Dr. Mohan on October 11, 2005.  R. 237.  Dr. Mohan concluded that the MRI results did not explain her clumsiness, and he ordered both a brain MRI and physical therapy.  R. 238.  The MRI showed a possible tiny venous angioma within the left frontal lobe, along with very mild non-specific leukoencephalopathy within the left cerebral hemisphere.  R. 236.

On November 15, 2005, Dr. Gentile performed a left C6 selective nerve root injection on Ms. Hilliard-Edwards to alleviate left neck and arm pain.  R. 209.  She reported two days later that her pain was relieved for a short period of time, but that currently she was experiencing left lower quadrant and groin pain.  R. 231.  Dr. Gentile sent Ms. Hilliard-Edwards to the emergency room to be evaluated.  The evaluation showed symmetrical movement in all extremities and a negative straight leg raising test.  R. 208, 229.

Ms. Hilliard-Edwards had a physical therapy evaluation on January 9, 2006.  R. 226.  She showed normal cervical and trunk range of motion, accompanied by some pain.  She also tested within the normal limits for upper and lower extremity strength, and she had negative slump and straight leg raise

tests.  She complained of tingling in both hands and tingling  with pain in the right leg behind the knee.  The physical therapist reported that Ms. Hilliard-Edwards had decreased range of motion for cervical left side bending, along with decreased tolerance for sitting, standing, and walking.  She received a "fair" prognosis.

On February 7, 2006, Ms. Hilliard-Edwards had another neurological evaluation with Dr. Mohan.  R. 291.  She reported that she discontinued physical therapy because it was not helping.  She also reported increased stuttering, stress, and left hand clumsiness. Dr. Mohan found mild evidence of dorsiflexion weakness in Ms. Hilliard-Edwards' left hand, along with decreased touch and pinprick in the radial forearm, thumb, and index fingers.  Ms. Hilliard-Edwards also exhibited mildly brisker reflexes in the left side and left-sided paraspinal neck tenderness.

On March 9, 2006, Ms. Hilliard-Edwards underwent a neuropsychological evaluation.  R. 150-54.  She did not complete all of the testing scheduled for the evaluation because she did not return after lunch, and she was resistant to the testing she did complete.  The report cautioned that the results were of questionable validity due to her behavior.  She took an IQ test that revealed she was functioning in the low range of intelligence, with a full scale IQ of 80 and a fifth grade reading level.  She also showed severe impairment in all aspects of memory but was relatively intact in almost all other cognitive areas.

On March 16, 2006, Ms. Hilliard-Edwards was evaluated by Dr. Iyas Yousef for the Disability Determination Bureau.  R. 281-286.  Dr. Yousef reported that Ms. Hilliard-Edwards had some problems maintaining her balance during tandem walking and that her movement was limited in the lumbar spine and cervical spine. Ms. Hilliard-Edwards could squat almost completely, but with some pain. Her grip was normal and her reflexes were symmetrical.

On April 4, 2006, Dr. Mohan performed another neurological evaluation. He determined that her situation was unchanged from the previous time he saw her, but he recommended that she follow up with another doctor due to her persistent pain.  R. 415.

On November 13, 2006 Josh Blanchard, a physical therapist trained in giving functional capacity evaluations, examined Ms. Hilliard-Edwards and issued a functional capacity summary report.  R. 370.  He found minor inconsistencies in the reliability of Ms. Hilliard-Edwards' subjective reports.  Ms. Hilliard-Edwards did not have an elevated heart rate during the testing because of her difficulty tolerating the lifting component and her short time on the treadmill.  R. 371.  She was shown to give good but not full effort in the testing.  *Id.*  Blanchard made determinations regarding Ms. Hilliard-Edwards's work tolerances, determining that she could do the following:  sit continuously for one hour, perform activities while looking down for one hour, and lift various weights (albeit with pain when

lifting from ground).  He concluded that Ms. Hilliard-Edwards could not return to her previous level of work.  R. 373.

On April 30, 2007, Dr. Craig Johnston wrote a letter describing Ms. Hilliard-Edwards' medical problems. He did not think Ms. Hilliard-Edwards could work a regular full time job.  R. 464-65.

II.     *Testimony at the Hearing*

Administrative Law Judge Roseanne Gudzan held a hearing on May 4, 2007 regarding Ms. Hilliard-Edwards' disability application.   Ms. Hilliard-Edwards testified that she first injured her back while lifting a couch, that it caused her constant pain, and that she had been advised that she needed to have surgery or she could lose control of her left leg.  R. 499-505.  She stated that she quit her job at Rolls-Royce because she started to fall frequently and could not stand for very long.   R. 498-99.   Ms. Hilliard-Edwards testified that she was constantly in varying states of pain, which caused her to lie down periodically, and that she had trouble sleeping through the night.  R. 500, 503.  She testified that she had some trouble doing everyday activities, but for the most part could do everything on her own.  *Id.*

The ALJ also heard testimony from vocational expert Michael Blankenship regarding Ms. Hilliard-Edwards' ability to work.  R. 525.  Blankenship noted that

there would be some deviation between the DOT code and the description of Ms. Hilliard-Edwards' past relevant work.  R. 526.  The ALJ then asked the vocational expert a series of hypothetical questions to determine Ms. Hilliard-Edwards' ability to work.  R. 527.  The ALJ's first hypothetical question involved a person with Ms. Hilliard-Edwards' qualifications who could perform sedentary work that allowed her to alternate positions for five non-consecutive minutes every hour at her work station, and who did not require any complicated tasks or strenuous physical activities.  R. 527-28.  The vocational expert testified that such a person could not do any of Ms. Hilliard-Edwards' past work but that significant work existed in the economy that the person could do.  R. 528-29.   The ALJ then asked if the hypothetical individual could do the same work if she could not lift from floor to knuckle height, work above eye level for greater than a few minutes, or perform repetitive gripping.  The vocational expert determined that the individual could still do the sedentary work described.  R. 530.  The vocational expert determined that the hypothetical individual would be eliminated from all work in the economy if, in addition to all of the above limitations, she had to lie down for two hours up to three times a day.  *Id.*  Based on the testimony of the vocational expert corresponding to the second hypothetical question and the residual functional capacity finding, the ALJ determined that Ms. Hilliard-Edwards could work as a receptionist/information clerk, general office clerk, or an interviewer – jobs that existed in significant numbers in the national economy, according to the regulations.  R. 24.  The ALJ denied benefits based on these determinations.

*Framework for Determining Disability and the Standard of Review*

To be eligible for the disability insurance benefits and supplemental security income she seeks, Ms. Hilliard-Edwards must establish that she suffered from a disability within the meaning of the Social Security Act.  To prove disability under the Act, the claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Ms. Hilliard-Edwards was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her in the immediate area, or whether she would be hired if she applied for work. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether Ms. Hilliard-Edwards was disabled under the Social Security Act, the ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 404.1520 and § 416.920. The steps are as follows:

(1)   Has the claimant engaged in substantial gainful activity? If so, she was not disabled.

(2)   If not, did the claimant have an impairment or combination of impairments that are severe? If not, she was not disabled.

(3)   If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant was disabled.

(4)   If not, could the claimant do her past relevant work? If so, she was not disabled.

(5)   If not, could the claimant perform other work given her residual functional capacity, age, education, and experience? If so, then she was not disabled. If not, she was disabled.

See generally 20 C.F.R. §§ 404.1520, 416.920.[1] When applying this test, the burden of proof is on the claimant for the first four steps, and on the Commissioner for the fifth step. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ determined that Ms. Hilliard-Edwards satisfied step one because she had not engaged in any substantial gainful activity since the alleged onset of her disability. R. 17. Turning to step two, the ALJ determined that Ms. Hilliard-Edwards had the following severe impairments: degenerative changes of the cervical and lumber spine; borderline intellectual functioning; osteoporosis;

---

[1]Ms. Hilliard-Edwards filed for both disability insurance benefits and supplemental security income benefits, which are covered in Sections 404 and 416, respectively, of the regulations. The requirements for determining medical disability under both sections are listed in Subpart P of Section 404. See 20 C.F.R. § 416.925.

memory impairment; and a history of urinary incontinence. *Id.* The ALJ determined that none of the impairments or combination of impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Ms. Hilliard-Edwards did not show the required nerve root compression with motor loss necessary to satisfy Listing 1.04(A) or the inability to ambulate effectively necessary to satisfy Listing 1.04(C). *Id.* The ALJ then determined that Ms. Hilliard-Edwards was unable to do her past relevant work but retained the residual functional capacity to do sedentary work consisting of simple, routine, repetitive tasks if the work would allow her to alternate positions for five non-consecutive minutes every hour at the work station. R. 20. After evaluating Ms. Hilliard-Edwards' subjective complaints regarding pain, the ALJ determined that this work would be subject to several limitations, which were listed in the ruling. *Id.*

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). Because the Appeals Council denied further review of the ALJ's findings, the ALJ's findings are treated as the final decision of the Commissioner. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court. 42 U.S.C. §§ 405(g), 1383(c)(3); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by re-weighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses.   *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  The ALJ's decision must be based upon consideration of all the relevant evidence, and the ALJ must articulate at some minimal level her analysis of the evidence so that the court can trace adequately the path of the ALJ's reasoning.   *Diaz*, 55 F.3d at 307-08.

*Discussion*

I.      *Due Process Claim*

First, Ms. Hilliard-Edwards asserts without any evidence or applicable authority that the benefits determination process denied her basic due process of law.  Disagreement with the outcome of the process does not show a denial of due process.

"Millions of claims are filed every year under the [Social Security] Act's disability benefits programs alone, and these claims are handled under 'an unusually protective [multi]-step process for the review and adjudication of disputed claims.'"  *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) (finding that improper denial of disability benefits resulting from due process violations did not give rise to claims for money damages) (citations omitted).  As a part of that process, a person is entitled to apply for receipt of benefits.  If benefits are denied, she may follow a series of procedural steps to ensure that denial was proper.  See 20 C.F.R. § 404.1503; see also 42 U.S.C. § 405(g).

As recited above, Ms. Hilliard-Edwards' initial application for disability insurance benefits and supplemental security income benefits was denied.  She then requested and received a hearing before an ALJ concerning that denial.  Unsatisfied with the results of that hearing, she sought review by the Appeals Council, which denied further administrative review.   Finally, Ms. Hilliard-Edwards brought this action for judicial review.  Ms. Hilliard-Edwards has not been denied due process of law.  On the contrary, she has received ample and thoughtful review at all levels of the multi-step process.  Her disappointment with

the result does not show a denial of due process.  The cases Ms. Hilliard-Edwards cites involved serious omissions in the review process, a scenario that does not exist here.  See *Smith v. Sec'y of Health, Ed. and Welfare*, 587 F.2d 857, 860-61 (7th Cir. 1978) (remand required when ALJ failed to advise mentally challenged applicant about the desirability of producing certain evidence when applicant was unassisted by counsel); *Ray v. Bowen*, 843 F.2d 998, 1004 (7th Cir. 1988) (Appeals Council erred by not providing any explanation as to why it disregarded several reports documenting claimant's diminished capacity).

Ms. Hilliard-Edwards claims that the ALJ "ignored, selectively considered or rejected all of the evidence proving disability."  Pl. Reply Br. 3.  Ms. Hilliard-Edwards then lists almost every piece of medical analysis that the ALJ did not specifically reference in her opinion as proof that the ALJ ignored this evidence.  See Pl. Reply Br. 5-12.  The ALJ, however, is not required to list every piece of evidence offered and to discuss its relevance.  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  The ALJ did not fail to consider a contradictory opinion, nor did she fail to consider a specific alleged condition in this case.  See *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2000) (ALJ was not required to address every piece of evidence, but erred by failing to mention three doctors' contradictory opinions).  The ALJ stated that she reviewed this evidence in her opinion, and she made specific reference to the claims Ms. Hilliard-Edwards made with regard to her claim of disability.  The court finds no error in the ALJ's determination and does not find a denial of due process in this case.

II.     *Listings 1.04(A) and 1.04(C)*

Ms. Hilliard-Edwards claims that she offered substantial evidence that her condition met or exceeded Listings 1.04(A) or 1.04(C) and that she is therefore entitled to disability benefits.   See 20 C.F.R. § 404, Subpt. P, App.1, § 1.04. Substantial evidence showed that Ms. Hilliard-Edwards' medical problems did not meet or equal Listings 1.04(A) or 1.04(C).

Listing 1.04 covers disorders of the spine, including degenerative disc disease.  To qualify as disabled under subsection (A), a spinal disorder must result in compromise of a nerve root or the spinal cord with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  Ms. Hilliard-Edwards did not meet Listing 1.04(A) because she did not demonstrate motor loss, reflex loss, or positive straight leg raising test results. The evidence submitted by Ms. Hilliard-Edwards shows that she demonstrated sufficient muscle strength, symmetrical reflex movement, and negative straight leg raising tests.  See R. 211, 245, 226-28, 281-86.  While one examination found mild weakness in her left hand and "mildly brisker reflexes" in the left side, this one example of mild symptoms did not require the ALJ to find Ms. Hilliard-Edwards disabled under Listing 1.04(A).

Ms. Hilliard-Edwards also did not meet Listing 1.04(C), which requires lumbar spinal stenosis resulting in the inability to ambulate effectively.  Ms. Hilliard-Edwards points to her functional capacity evaluation on November 13, 2006, in which the evaluator found that she would have difficulty doing jobs which required her to "walk for any length of time" as evidence of her inability to ambulate effectively.  R. 373.  However, the inability to ambulate effectively is defined in the federal regulations as "an extreme limitation of the ability to walk," generally requiring the assistance of a hand-held device for walking that limits the functioning of both upper extremities. 20 C.F.R. § 404, Subpt. P, App.1, § 1.00(B)(2)(b).  While Ms. Hilliard-Edwards' medical problems limit her ability to walk at length, the ALJ was presented with substantial evidence that she could ambulate effectively as defined in the governing regulations.

Ms. Hilliard-Edwards also argues that the ALJ did not rely on medical expertise to determine that her conditions were not medically equivalent to Listings 1.04(A) or 1.04(C).  The ALJ could have found that Ms. Hilliard-Edwards' condition was medically equivalent to Listings 1.04(A) or 1.04(C) even if she did not exhibit one of the findings in the listings, or one of the findings was not as severe as specified in the listing, if she demonstrated other findings related to the impairment that were at least of equal medical significance to the absent required criteria.  See 20 C.F.R. § 404.1526.  Ms. Hilliard-Edwards did not make this showing.  No evidence was presented to the ALJ of another condition related to her impairment that was equal to one of the absent findings.  See *Scheck v. Barnhart*,

357 F.3d 697, 700-01 (7th Cir. 2004) (ALJ not required to articulate reasons for relying on consulting physician's determination on equivalence when claimant presented no evidence of equivalence).  The ALJ could properly rely on the medical determinations of two physicians designated by the Commissioner regarding medical equivalence.  See R. 26-27.  The court does not find error in the ALJ's determination that Ms. Hilliard-Edwards did not qualify for disability under Listings 1.04(A) or 1.04(C).[2]

III.  *Mental Capacity*

Ms. Hilliard-Edwards claims that the ALJ did not give proper consideration to her mental capacity because the ALJ ignored the fact that she had "severe memory impairment" and did not finish the neuropsychological evaluation because she was too upset.  However, these two factors do not qualify Ms. Hilliard-Edwards for disability under the regulations.  All the categories of mental impairment under Listing 12.00 require, among other things, at least two of the following:  marked restriction of activities of daily living, marked difficulties in maintaining social functioning or concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.  See 20 C.F.R. § 404, Subpt. P, App.1, §§ 12.01 to 12.10.  Ms. Hilliard-Edwards did not depend on

_____

[2]Ms. Hilliard-Edwards points to a letter from Dr. Craig Johnston stating that she was not able to maintain a regular work schedule as evidence of disability.  However, as she notes in her brief (Pl. Br. 32), the ALJ was not required to rely on Dr. Johnston's opinion that she was disabled because that is a legal issue that is specifically reserved for the Commissioner.  20 CFR § 404.1527(e); SSR 96-2p.

assistance for day-to-day functioning, and she did not submit evidence of marked difficulties in social functioning or concentration.  The partial neuropsychological evaluation placed her full scale IQ at 80, which does not qualify her as mentally retarded pursuant to Listing 12.05.  The ALJ did not err in assessing Ms. Hilliard-Edwards mental capacity.

IV.    *Credibility Assessment*

Ms. Hilliard-Edwards also claims that the ALJ made an improper determination as to her credibility.   The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the record.  See, *e.g.*, *Knight v. Chater*, 55 F.3d 309, 313-15 (7th Cir. 1995).  The ALJ can discount subjective complaints of pain that are inconsistent with the evidence as a whole, but cannot discount such complaints merely because they are not supported by objective medical evidence.   "The absence of objective medical evidence is just one factor to be considered along with:  (a) the claimant's daily activities; (b) the location, duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) type, dosage, effectiveness and side effects of medication; (e) treatment other than medication; (f) any measures the claimant has used to relieve the pain or other symptoms; and, (g) functional limitations and restrictions."    *Knight*,  55  F.3d  at  314,  citing  20  C.F.R. § 404.1529(c)(3).

The ALJ need not mechanically recite findings on each factor, but the ALJ must give specific reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed. Social Security Ruling 96-7p, printed in 61 Fed. Reg. 34483-01, 34486 (1996); see *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (in making a credibility determination the ALJ must comply with the requirements of SSR 96-7p, which requires ALJ to articulate the reasons behind credibility evaluations); *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002) (ALJ's explanation insufficient where the ALJ had written only: "The claimant's subjective complaints and alleged limitations were considered under the criteria of Social Security Ruling 96-7p and found credible only to the extent of precluding the claimant from performing work in excess of light level").

Courts afford the credibility determinations made by hearing officers special deference, given their opportunity to hear and observe a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). An ALJ's credibility finding will not be disturbed unless it is "patently wrong in view of the cold record." *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986); see also *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995). Here, the court will not disturb the ALJ's credibility finding because it is supported by substantial evidence and is not patently wrong. The ALJ properly noted statements by Ms. Hilliard-Edwards that are inconsistent with her claim of total disability, including a statement indicating that she was working multiple jobs a few days before she filed for disability benefits. R. 201. Ms.

Hilliard-Edwards has not shown that the ALJ's credibility determination was patently wrong.

V.      *Residual Functional Capacity*

Finally, Ms. Hilliard-Edwards claims that the ALJ erred in determining her residual functional capacity by not considering any of the work restrictions set forth in the functional capacity evaluation done on November 13, 2006.  R. 403-05.  However, the ALJ's opinion shows that she took this report into consideration and relied on the report in limiting Ms. Hilliard-Edwards to the demands of sedentary work that allows her to alternate positions at her work station.  The ALJ also took into account Ms. Hilliard-Edwards' physical and mental limitations, as set forth in the Residual Functional Capacity Evaluation, by placing several physical restrictions on her work and limiting her to tasks that were "simple, routine, and repetitive."  R. 20.  The ALJ articulated these requirements and restrictions to the vocational expert at the hearing, and the vocational expert took them into account when considering what jobs were available to Ms. Hilliard-Edwards in the local economy that she could perform subject to these restrictions.  R. 527-30.  The court finds no error in the ALJ's residual functional capacity determination.

*Conclusion*

The ALJ properly considered all of the evidence presented by Ms. Hilliard-Edwards.  The ALJ's decision thoroughly discussed the evidence presented and

the bases for her conclusions.  The court affirms the Commissioner's denial of Ms.

Hilliard-Edwards' application for disability insurance and supplementary security

income benefits.  Final judgment will be entered accordingly.


     So ordered.


Date: December 1, 2008

                                     _____
                                     DAVID F. HAMILTON, CHIEF JUDGE
                                     United States District Court
                                     Southern District of Indiana


Copies to:

Patrick H. Mulvany
mulvany@onet.net

Tom Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov